**Jack ROUSE, Plaintiff-Appellee,**

v.

**Jean McDONOUGH, personal representative for deceased, Patrick J. McDonough, Defendant-Appellant.**

No. 79CA0165.

Colorado Court of Appeals, Div. II.

Nov. 28, 1980.

Sumners & Fowler, P. C., William G. Sumners, Jr., Denver, for plaintiff-appellee.

Burg & Wolfe, P. C., Charles D. Burg, Mark M. Wolfe, Denver, for defendant-appellant.

RULAND, Judge.

Defendant, Jean McDonough, personal representative for Patrick McDonough, deceased, appeals from a judgment of the trial court ordering the payment of certain royalties to the plaintiff, Jack Rouse, as compensation for services rendered. We affirm.

The relevant facts are not disputed. In 1972, Rouse was retained by the decedent to

negotiate the purchase of surface rights to certain land in Montana where underlying coal deposits were suspected. The United States government had reserved all rights to the coal, and it was necessary for the decedent to secure the surface rights in order to obtain federal coal leases.

Rouse was successful in acquiring certain surface rights for the decedent, and the parties executed a written contract for payment of Rouse's services which provided for cash payments and "⅓ of one cent per ton royalty on options I purchased . . . ."

On May 11, 1973, the decedent entered into an exploration agreement with Utah International, Inc., (Utah) which agreement granted Utah an option to lease or purchase the subject property and also provided that Utah would pay the decedent an "annual advance overriding royalty" of $40,000 per year. The agreement further provided that these royalties could be recouped by Utah out of subsequent royalties payable to the decedent on coal mined and sold or consumed by Utah.

Rouse filed this suit to collect his share of the advance royalties paid to the decedent by Utah. Following a trial to the court, it determined that the royalties were the type of royalties contemplated by the contract and entered judgment for Rouse.

The personal representative contends that the trial court erred in interpreting the contract to require payment of a share of the advance royalties to Rouse. She bases this contention on the premise that, at the time of contracting, both parties contemplated that Rouse would only be entitled to receive royalties when and if production occurred. Over Rouse's objection, parol evidence was admitted in support of this interpretation of the contract. She argues that the royalties paid by Utah were in the nature of a delay rental and that they were paid primarily as an inducement to secure the lease of the lands. We agree with the trial court's ruling.

It is clear that, at the time of contracting, both parties understood the term "royalty" to mean a share in mineral production. The mere fact that the parties later disagreed over the application of that term does not, in itself, create an ambiguity. *See Brunton v. International Trust Co.*, 114 Colo. 298, 164 P.2d 472 (1945). And, merely because Utah agreed to pay a share of mineral production in advance of actual production does not convert its payment into a delay rental. Hence, the trial court did not err in concluding that the term "royalty" included advance royalties. *See generally 5 American Law of Mining* §§ 17.4 & 30.4 (1980). *See also Van Doren v. Thurber*, 57 Cal. App.2d 506, 134 P.2d 829 (1943); *Taylor v. Kingman Feldspar Co.*, 41 Ariz. 376, 18 P.2d 649 (1933).

We have considered the personal representative's other contentions and find them to be without merit.

Judgment affirmed.

SMITH and BERMAN, JJ., concur.